No. 69,645

STATE OF KANSAS, *Appellee*, v. RICHARD P. JOHNSON,
*Appellant*.
(871 P.2d 1246)

Opinion filed April 15, 1994.

*Gary W. Long, II*, of Kansas City, argued the cause and was on the brief for appellant.

*Larry C. Hoffman*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Richard P. Johnson appeals his convictions by a jury of first-degree murder, aggravated robbery, and felony theft. He also appeals from the imposition of a mandatory term of imprisonment pursuant to K.S.A. 1993 Supp. 21-4624.

Richard Johnson was convicted of murdering Kina Caldwell. On January 9, 1992, Johnson was living with Caldwell and her two young children in a duplex. Johnson described Caldwell as his "very dear friend," like a sister, and explained that they had separate sleeping quarters. He had been released from prison in December 1991 and had been living with Caldwell approximately two weeks.

Caldwell was found dead in her living room the morning of January 10, 1992. She had bled to death from 27 knife wounds.

Fanny Crafton lived in the other half of the duplex with Caldwell. After arriving home about 10:00 p.m. on January 9, 1992, Crafton talked on the telephone for several hours. While on the telephone, she heard Caldwell scream. Crafton testified that Caldwell was upstairs when she first screamed, and then Crafton heard a loud noise as something hit the common wall along the stairway. Crafton heard Caldwell say, "Oh, God help me," and "Richard, why you doing this to me?" and then she heard Caldwell fall down the stairs. She heard someone else go down the stairs and a male voice calling someone a "bitch." Again Caldwell asked, "Why you doing this to me?" and then her voice faded away. After the noise subsided, Crafton went to sleep.

Kenesha, Caldwell's six-year-old daughter, testified that she had been sleeping in the room with her mother that night. When Kenesha woke up during the night, her mother was not there and there was blood on the light switch. Kenesha went downstairs and found her mother on the floor. It was still dark. Kenesha went to a neighbor's house. She did not see her mother's car at that time.

Officer Brandon arrived at Caldwell's apartment shortly after 5:00 a.m. the morning of January 10, 1992. Caldwell was lying dead on the floor of the living room, and the floor was covered with blood. There was blood throughout the apartment. Caldwell's car was missing. Crafton testified that the car had been

parked in front of Caldwell's apartment when she arrived home the night of January 9.

Several people who were at the residence of Chris Charles the night of January 9 testified that Johnson arrived there at approximately 10:30 to 11:00 p.m. Johnson had blood and scratches all over him. Caldwell's car was parked in front of Charles' residence when Johnson was there, and Johnson was seen driving her car that night.

Charles testified that Johnson told him that he had killed someone that night. Johnson asked Charles' brother, Raymond, if he knew where he could get a gun. Johnson was told to "chill out," and he asked Lance Williams to dig in Johnson's pocket for his cigarettes. Williams pulled some folded $20 bills out of Johnson's pocket along with his cigarettes. The money had blood on it. Williams guessed that there was $300 in $20 bills in a wad in Johnson's pocket. Charles described it as "a pretty nice sum of money."

Caldwell's car was found by the police the following day. The car was a 1982 model Toyota, which Caldwell had purchased for $1,100 with the income tax refund she received in 1991.

A black jacket was found in the car. It had a small purse with Caldwell's identification cards in the pocket. Caldwell's mother testified that Caldwell usually kept her money in a small leather pouch in her black jacket and that she had $200 in the pouch on January 6. Kenesha testified that her mother usually kept her billfold in her jacket.

Johnson raises numerous issues on appeal. He contends there was insufficient evidence to support his convictions of aggravated robbery and felony theft. He alleges the trial court erred in limiting his cross-examination of several witnesses, failing to suppress his statement, admitting into evidence Fanny Crafton's statement and evidence of the money the victim possessed prior to her death, and finding the State complied with the provisions of K.S.A. 1993 Supp. 21-4624(1).

We first consider if the evidence was sufficient to support the conviction of aggravated robbery. With regard to the sufficiency of the evidence, this court has stated:

"When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Following *State v. Graham*, 247 Kan. 388, Syl. ¶ 5, 799 P.2d 1003 (1990)." *State v. Evans*, 251 Kan. 132, Syl. ¶ 1, 834 P.2d 335 (1992).

Johnson contends that the State failed to show that he ever exercised control over Caldwell's money, wallet, or jacket and failed to show that "any of the property was present on the person of Kina Caldwell on January 9, 1992."

The State was required to prove:

(1) that Johnson intentionally took property from the presence of Caldwell;

(2) that the taking was by force; and

(3) that Johnson inflicted bodily harm on Caldwell in the course of such conduct. PIK Crim. 3d 56.31.

The evidence, viewed in the light most favorable to the prosecution, was that Caldwell bled to death from knife wounds. On the night of her murder, Johnson was scratched and covered with blood, he was driving her car, and he had a wad of bloody money. Caldwell customarily kept her money in a small purse in her jacket pocket. When her car was found the day following her death, Caldwell's jacket and empty purse were found in it. From this evidence, a rational factfinder could have found Johnson guilty beyond a reasonable doubt of aggravated robbery.

Johnson next contends that the evidence was insufficient to support the conviction of felony theft. K.S.A. 21-3701, which was in effect at the time of Caldwell's murder, provided that theft could be a misdemeanor or a felony offense depending on the value of the property involved. "Theft of property of the value of at least $500 but less than $50,000 is a class E felony." K.S.A. 21-3701.

Johnson argues that the State failed to establish the value of Caldwell's car at the time it was taken. He concedes that the State showed that Caldwell had paid $1,100 for the car approximately one year earlier, and he concedes that evidence of the purchase price of property generally may be used to establish value. He

argues, however, that in the intervening year Caldwell's car was damaged in an accident and that there was no evidence of the value of the car at the time it was taken or of the diminution in value from which the jury could compute the January 1992 value.

Johnson relied on the testimony of Crafton to support his argument. On cross-examination of Crafton, the following questions were asked and answered:

"Q. The car identified in State's Exhibit—what's been marked State's Exhibit 1 and 2. Umm, that car had been wrecked at some point after Kina had it.

"MR. HOFFMAN: Your Honor, I am gonna object to the relevance.

"THE COURT: Overruled.

"A. (By the Witness) Umm, it was. I mean, you can't see the back.

"Q. Uh-huh?

"A. It was like the taillight, like somebody had backed into a wall on the taillight.

"Q. Somebody had backed into her?

"A. Or somebody had hit her. It was like that.

"Q. But it had been damaged after Kina had it, is that right?

"A. Yeah."

From Crafton's testimony, the jurors knew that a taillight of the car had been damaged since Caldwell bought it. In its brief, the State asserts that it introduced nine pictures of the car which gave the jurors "a clear picture" of the car's condition at the time it was taken.

The evidence consists of testimony that the 1982 Toyota had been purchased approximately one year earlier for $1,100 and that there was damage to the rear end, probably confined to a taillight. In addition, there were pictures reflecting the condition of the car, although none showed the damage to the taillight. Johnson cites *State v. Towner*, 202 Kan. 25, 446 P.2d 719 (1968), as a case in which this court found the evidence of value wanting. Towner was convicted of grand larceny of an automobile. At the time of his conviction, K.S.A. 21-533 (Corrick) required proof that the automobile was of the value of $50 or more. The court stated: "All that was shown was the make, year and model of the automobile, that it was second hand and operable. At the time taken it was approximately eight years old." 202 Kan. at 29. In other words, there was no evidence of the condition or purchase price

or of the Blue Book price range or of the value of comparable automobiles. In these circumstances, the conviction of grand larceny was reduced to petty larceny.

In *Towner* the court reasoned:

"We would not say the diacritical amount could never be inferred in a particular case where property has been sufficiently described or exhibited to the trier of the fact. However, prices of automobiles of the vintage in question are negotiable over a considerable range and are in part at least dependent upon condition. Possibly this vehicle was in fact worth $50.00 but upon the showing made, this fact would not be a matter of unquestionable common knowledge." 202 Kan. at 29.

Thus, in *Towner* this court did not rule out the possibility of value ever being inferred, but concluded that it could not reasonably be inferred from merely the make and year of the automobile. In the present case, in addition to the make and year of the car, the evidence included its dollar value approximately a year before it was taken and several pictures reflecting the condition of the car at the time of trial. The evidence was sufficient to support the jury's determination that the value of the car exceeded $500.

Johnson next contends he should have been allowed to cross-examine witnesses about their convictions and plea agreements. His statement of this issue is: "Defendant was not allowed to cross examine witnesses against defendant regarding their convictions and or plea agreements." He does not state, however, which witnesses he was not allowed to question or where in the record the court's ruling(s) may be found. In the statement of facts in his brief, Johnson stated:

"Prior to trial the State filed a Motion in Limine to preclude defendant's attorney from Cross examining Raymond Charles and Lance Williams regarding their incarceration. The Court granted the State's motion over defendant's objection prior to trial and at the trial."

Johnson has not referred the court to any portion of the record which contains information about the witnesses' convictions or plea agreements.

The State's response focuses on Raymond Charles and Lance Williams. Both men testified at Johnson's preliminary hearing.

The State asserts that between the preliminary hearing and the trial, Raymond Charles and Williams were charged with first-degree murder and aggravated robbery. Each pled guilty to second-degree murder, and the aggravated robbery charges were dismissed. This comports with what was said at the time of trial with respect to Raymond Charles, but at trial the prosecutor seems to have agreed that Williams was convicted of aggravated robbery. The State has not referred the court to any portion of the record which contains support for its assertions about the charges, pleas, dismissals, or timing.

Before Johnson's trial, the State filed a motion in limine seeking "to exclude testimony or cross-examination concerning the current residence of Lance Williams and Raymond Charles, and testimony regarding crimes that both men are incarcerated on." During a bench conference at trial, Johnson's counsel stated that the district court had "ordered me not to discuss the plea agreement." He seems to have been referring to Raymond Charles' plea agreement; the bench conference occurred during Raymond Charles' testimony. The district court judge stated that he had granted the State's motion in limine on the ground that the crimes of which Raymond Charles and Williams had been convicted were not crimes of dishonesty. Johnson's counsel sought to cast doubt on the truthfulness of the State's witnesses and to show that they were "biased." He challenged the ruling on the ground that Raymond Charles had been charged with robbery, a crime of dishonesty, but that the charges were dismissed as part of the plea agreement. Johnson's counsel stated that Williams had been convicted of aggravated robbery.

The defendant does not indicate where in the record it shows he was prevented from asking questions of witnesses, and where in the record the assertions about the witnesses are substantiated. The defendant has the burden of furnishing a record on appeal which affirmatively shows that prejudicial error occurred. *State v. Gonzales*, 245 Kan. 691, 699, 783 P.2d 1239 (1989). The defendant has not met that burden, and we therefore find no error.

Johnson next contends that the police elicited a statement from him on the day after counsel was appointed to represent him but

without counsel being present. He argues that the statement was obtained in violation of the Sixth Amendment and, therefore, should have been suppressed. He does not state whether the statement was offered into evidence or whether the State made any use of it. In cross-examining the defendant, the assistant district attorney made the following reference to a statement:

"Q. Let me show you this. Is this a copy of your statement?
"A. Yes, it is.
"Q. And what's the date indicated in the top left?
"A. January the 17th, 1992."

There is no indication in the record that a written statement of the defendant was ever marked as an exhibit and introduced into evidence.

At trial, Officer Michael J. Shomin testified that Johnson telephoned him, requesting that he come to the jail so Johnson could give a statement as to what happened on the night Caldwell was killed. When the officer arrived at the jail, he advised Johnson of his rights, and Johnson told him his version of what happened on the night of January 9, 1992.

Officer Shomin testified about Johnson's version of events. No objection was raised immediately preceding the officer's recounting of Johnson's statement, but during an earlier bench conference defense counsel stated that there had been hearings on the admissibility of the statement and that he was renewing his objection.

Johnson told the officer that he had been upstairs when he heard Caldwell calling to him for help. Downstairs, he found a man stabbing Caldwell, and he wrestled with the assailant. After the other man ran away, Caldwell died in Johnson's arms. Because he was scared, Johnson got dressed and left in Caldwell's car. He drove around looking for the assailant, he went to Chris Charles' looking for a gun, and then he abandoned Caldwell's car.

This is not a confession. It is instead Johnson's account of his trying to rescue Caldwell from attack by another man. Johnson told the same story to the jury at trial. As to the statement, Johnson testified on direct examination:

"Q. Okay. Now, did you contact Detective Shomin and tell him you wanted to give a statement?

"A. Yes, I did.

"Q. Okay. and do you remember when that was?

"A. Uh, it was a couple days after I had turned myself in. It was that following week. The precise date I—I really can't say.

"Q. When you gave a statement, it was just you and Detective Shomin in the room, is that correct?

"A. It was me, Detective Shomin, and then there was another officer sitting up at the—like this little panel.

"Q. Okay.

"A. But she was—she was like far away from us, so, yeah, you could say it was just me and Detective Shomin.

"Q. Okay, Did Detective Shomin tell you what your rights were?

"A. Yes, he did.

"Q. Did he tell you that if you wanted a lawyer present during that hearing or during the conversation, one would be brought in for you?

"A. Yes, he did.

"Q. Did you tell him you wanted a lawyer?

"A. No, I didn't.

"Q. You told him you didn't want a lawyer for that statement?

"A. No, I didn't.

"Q. And you didn't have a lawyer for that statement?

"A. No, I didn't."

This court often has stated: "Errors that do not affirmatively cause prejudice to the substantial rights of a complaining party do not require reversal when substantial justice has been done." *State v. Peltier*, 249 Kan. 415, Syl. ¶ 4, 819 P.2d 628 (1991), *cert. denied* 120 L. Ed. 2d 875 (1992). Johnson contends that his statement was made without the presence of counsel and is inadmissible under the Sixth Amendment. This court has held that such an error can be held to be harmless if "the appellate court can declare beyond a reasonable doubt that the error had little, if any, likelihood of changing the results of the trial." 249 Kan. 415, Syl. ¶ 5. With Johnson and the police officer who took Johnson's statement offering into evidence the same version of the events, there is no doubt that admission of the statement had little, if any, likelihood of changing the result of the trial.

Moreover, we conclude it was not error to admit the statement into evidence. This court has held that " '[a]n accused may ef-

fectively waive the right to have counsel present during any police interrogation. The fact that he has previously retained counsel does not necessarily make inadmissible a voluntary statement made by the defendant in his counsel's absence.' " *State v. O'Neal*, 238 Kan. 183, 186, 708 P.2d 206 (1985) (quoting *State v. Costa*, 228 Kan. 308, Syl. ¶ 3, 613 P.2d 1359 [1980]). The circumstances surrounding Costa's statement are remarkably similar to the circumstances in the present case. The day after he retained counsel to represent him, Costa, who was incarcerated, asked to speak with an officer. Costa was advised of his constitutional rights, including the right to counsel, and signed a written waiver. He then made a generally exculpatory statement. In the present case, the day after he requested that counsel be appointed to represent him, Johnson, who was incarcerated, asked to speak with an officer. Johnson was advised of his constitutional rights, including the right to counsel, and signed a written waiver. He then made a generally exculpatory statement.

In *Costa*, the court concluded its consideration of this issue with the following remarks:

"The appellant does not contend the statement was involuntary, only that it was made without the presence of counsel. The trial court conducted an evidentiary hearing and found the appellant had waived his right to have counsel present. The record discloses substantial competent evidence to support the trial court's finding. *State v. Porter*, 223 Kan. 114, 118, 574 P.2d 187 (1977). The trial court did not commit error in admitting the appellant's statement into evidence at trial." 228 Kan. at 314.

The United States Supreme Court cases cited by Johnson involve interrogations initiated by police rather than undisputedly voluntary statements, as in the present case. See *Michigan v. Jackson*, 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404 (1986); *Brewer v. Williams*, 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232 (1977).

In the recent case of *Minnick v. Mississippi*, 498 U.S. 146, 112 L. Ed. 2d 489, 111 S. Ct. 486 (1990), the Supreme Court, in suppressing the statement made by Minnick without his attorney being present, stated:

"In our view, a fair reading of *Edwards* [*v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981),] and subsequent cases demonstrates that we

have interpreted the rule to bar police-initiated interrogation unless the accused has counsel with him at the time of questioning. Whatever the ambiguities of our earlier cases on this point, we now hold that when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney.

. . . .

"*Edwards* does not foreclose finding a waiver of Fifth Amendment protections after counsel has been requested, provided the accused has initiated the conversation or discussions with the authorities; but that is not the case before us. There can be no doubt that the interrogation in question was initiated by the police; it was a formal interview which petitioner was compelled to attend. Since petitioner made a specific request for counsel before the interview, the police-initiated interrogation was impermissible. Petitioner's statement to [the sheriff] was not admissible at trial." 498 U.S. at 153-56.

In the present case, Johnson invoked his Sixth Amendment right to counsel during the initial interrogation. He was therefore not subject to further interrogation absent counsel being made available to him unless further communications, conversations, or interrogation was initiated by him. Johnson did initiate the interview with Officer Shomin. He was not compelled to do so, and clearly his statements were freely and voluntarily given.

Johnson next argues that his statement should not have been admitted into evidence because it was obtained in violation of DR 7-104(A)(1) of the Code of Professional Responsibility, Supreme Court Rule 225 (1993 Kan. Ct. R. Annot. 234), which prohibits communication by a lawyer with a party he or she knows to be represented by counsel. There does not seem to be a contention that the statement was given to an attorney. Rather, the contention seems to be that the police officer was acting "as the alter ego of the government prosecutors." Johnson points to absolutely nothing in the record, however, which would support such a contention.

In any event, this court has held with regard to DR 7-104(A)(1) that the admissibility of evidence is determined by constitutional and statutory measures and that codes of professional conduct play no part. *State v. Morgan*, 231 Kan. 472, 478-79, 646 P.2d 1064 (1982). "Sanctions for violation of DR 7-104(A)(1) are irrelevant to this case." 231 Kan. at 479.

Johnson next argues that Fanny Crafton's statements are inadmissible hearsay under K.S.A. 1993 Supp. 60-460. He does not specify which statements are inadmissible. In the statement of facts of his brief, Johnson mentions that Crafton testified that she heard Caldwell say "Richard" and ask why he was "doing this to me?" It appears that these are the statements he complains of. During trial, Johnson's counsel approached the bench and objected, referring to a motion in limine, to the line of questioning which elicited these responses. His objection was overruled.

It is the State's position that Crafton's testimony was admissible pursuant to one of the exceptions to the hearsay rule, K.S.A. 1993 Supp. 60-460(d). The statute provides in pertinent part:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

. . . .

"(d) *Contemporaneous statements and statements admissible on ground of necessity generally.* A statement which the judge finds was made (1) while the declarant was perceiving the event or condition which the statement narrates, describes or explains, (2) while the declarant was under the stress of a nervous excitement caused by such perception or (3) if the declarant is unavailable as a witness, by the declarant at a time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort."

The declarant, Caldwell, was unavailable as a witness because she had died prior to trial. The statements were made while she was experiencing the event which the statement narrates and while she was under the stress of the experience. No incentive for her to falsify or to distort the experience is in evidence. Thus, the requirements of K.S.A. 1993 Supp. 60-460(d)(1), (2), and (3) were satisfied, and the district court's admission of the statements into evidence was proper.

Johnson also contends that Caldwell's mother's statement that her daughter had $200 in her possession several days before her death "had little probative value" and was irrelevant. The gist of his argument seems to be that her possession of $200 at one time does not tend to prove that she possessed it several days later.

At trial, defense counsel objected to the witness' stating whether Caldwell had any money on her on January 6, 1992.

Johnson further contends that the statement should have been excluded because it subjected him "to undue and unfair prejudice." Johnson seems to be referring to the district court's discretion to exclude relevant evidence where the probative value would be substantially outweighed by its prejudicial effect. See K.S.A. 60-445; *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, Syl. ¶ 11, 549 P.2d 1354 (1976).

This court has stated: "The question of whether evidence is too remote to be relevant is left to the discretion of the trial judge, whose decision will not be disturbed unless a clear abuse of discretion has been demonstrated." *State v. Griffin*, 246 Kan. 320, Syl. ¶ 4, 787 P.2d 701 (1990). The test, then, is whether any reasonable person would agree with the district court's determination that the evidence was admissible. If so, this court will not disturb the district court's decision. 246 Kan. at 326.

The State argues that the evidence was highly relevant and its relevance is particularly obvious when the evidence is considered in context. Caldwell's mother's testimony established that Caldwell had $200 several days before her death and that she customarily kept her money in a pouch in her jacket pocket. Other evidence established that the jacket and empty pouch were found in Caldwell's abandoned car, which Johnson had been driving immediately after her murder. Other evidence also established that immediately after the murder, Johnson was carrying bloody folded $20 bills, which Charles said was "a pretty nice sum of money" and Williams guessed to be about $300.

Here, although Caldwell's mother could not testify about the amount of money Caldwell possessed on the day she was murdered, a reasonable connection may be made between the money she had on January 6 and the money possessed by Johnson after her murder. Once the evidence was admitted, it was for the jury to determine its weight. See *State v. Milo,* 249 Kan. 15, 26, 815 P.2d 519 (1991).

Johnson next contends that the State did not comply with K.S.A. 1993 Supp. 21-4624(1) and that the district court im-

properly imposed the mandatory 40-year sentence. K.S.A. 1993 Supp. 21-4624(1) provides:

"If a defendant is charged with murder in the first degree, the county or district attorney shall file written notice if such attorney intends, upon conviction or adjudication of guilt of the defendant, to request a separate sentencing proceeding to determine whether the defendant should be required to serve a mandatory term of imprisonment of 40 years. Such notice shall be filed with the court and served on the defendant or the defendant's attorney at the time of arraignment. If such notice is not filed and served as required by this subsection, the county or district attorney may not request such a sentencing proceeding and the defendant, if convicted of murder in the first degree, shall be sentenced as otherwise provided by law, and no mandatory term of imprisonment shall be imposed hereunder."

Johnson contends that the State failed to file with the court written notice of its intention to request a separate sentencing proceeding until 155 days after his arraignment. He does not contend that he did not receive notice of the State's intention. He states that he and his counsel "were provided notice. The docket sheet does not reflect that notice was filed with the court." It appears that the docket sheet entry to which he refers is dated February 27, 1992. There are several items with that date, and they state:

"2/27/92 Count II amended orally, amended information to be filed to include 'sum of money[.]'

"Record should reflect State intention to request mandatory 40 yr sent. if convicted on Count I.

"The court finds a crime has been committed as charged and there is probable cause to believe deft. guilty thereof. Deft. bound over for trial, deft. waives formal arraignment and pleads not guilty. Bond set $200,000. Pre-trial conference set 3-4-92 2:30 p.m. [signed] Michael G. Moroney, Judge"

The State contends that the part of this docket sheet entry concerning the "hard-40" records the State's submitting to the district court judge the original written notice of intention to request a separate sentencing proceeding. The State contends that at the arraignment, the original written notice was given to the judge and a copy was given to Johnson and his counsel. We do not agree. A fair reading of the entry on the docket sheet requires the conclusion that written notice was not submitted to the judge during the courtroom proceeding on February 27, 1992.

Also as support for its contention, the State brings to the court's attention the following colloquy from the courtroom proceedings on February 27, 1992:

"MR. HOFFMAN: For the record, Your Honor, we wish to inform the defendant and the Court at this time that it is the State's intention to invoke the mandatory term of imprisonment—I think it's pursuant to statute 21-3401, K.S.A.—that should the defendant be found guilty by a jury of premeditated murder, he is subject to the sentencing of a mandatory term of forty years imprisonment without parole.

"THE COURT: Very well. And you'll supply him with written notice of that?

"MR. HOFFMAN: Your Honor, I'll supply him with that immediately.

"MR. LONG: Do you have a copy—I need a copy of—"

A fair reading of the transcript of the proceedings does not require the conclusion that written notice was given to either the court or to defense counsel at that time.

The State concedes that the written notice contained in the record was not file-stamped until July 31, 1992. The July 1992 date in the certificate of service of this document establishes that it is not the written notice which the State claims to have given to the judge in February 1992. The State offers no explanation why the July 1992 written notice was filed.

The State offers the following explanation for giving the original written notice to the judge rather than filing it with the clerk of the court:

"[K.S.A. 1993 Supp. 21-4624(1)] requires notice at arraignment. In Wyandotte County District Court, arraignment takes place immediately after preliminary hearing. The notice [of the State's intention to request a separate sentencing proceeding] cannot be filed prior to preliminary hearing because the defendant has yet to be bound over for trial, so prior filing would be premature. Since arraignment immediately follows preliminary hearing, there is no lapse of time which gives the State an opportunity to file notice with the clerk of the court. The State's only alternative is to file directly with the Judge at arraignment."

In *Tobin Constr. Co. v. Kemp*, 239 Kan. 430, Syl. ¶ 1, 721 P.2d 278 (1986), the court stated:

"K.S.A. 60-205(e) sets out the procedures necessary for a proper filing of documents with the court. K.S.A. 60-205(e) provides that a judge may accept pleadings and other papers to be filed initially with him prior to their transmission to the clerk's office for entry on the docket sheet. Under this procedure, filing is complete when the judge personally accepts custody of the papers."

With regard to what is now K.S.A. 1993 Supp. 60-205(e), this court has stated: "Although [60-205(e)] is in the code of civil procedure, it may be considered applicable in criminal proceedings, there being no provision in the criminal procedures to the contrary." *State ex rel. Owens v. Hodge*, 230 Kan. 804, 808, 641 P.2d 399 (1982). However, we do not find from the record before us that the State served the original notice with the judge on February 27, 1992.

In *State v. Deavers*, 252 Kan. 149, 843 P.2d 695 (1992), there was no mention at arraignment of the State's intention to request a separate sentencing proceeding. The arraignment was concluded and court adjourned for the noon recess after the prosecutor indicated that there were no further matters to bring before the court. At 2:00 p.m. on the same day, court reconvened at the prosecutor's request. The prosecutor advised the court and defense counsel that she had forgotten to give notice to Deavers of the State's request for a 40-year mandatory term. This court concluded: "The notice provisions of K.S.A. 1991 Supp. 21-4624, the first-degree murder 'hard-40' sentencing statute, are mandatory. Failure of the State to comply with such provisions requires a sentence imposed thereunder to be vacated." 252 Kan. 149, Syl. ¶ 6.

*Deavers* is controlling in the present case. The State did not file written notice with the court until July 31, 1992. Our rationale in *Deavers* requires that we vacate Johnson's hard-40 sentence.

Because we are vacating Johnson's hard-40 sentence, we need not address Johnson's final argument that it was error to allow the State to discuss K.S.A. 1993 Supp. 21-4624 in voir dire and at trial.

We affirm the convictions, vacate the sentence imposed under K.S.A. 1993 Supp. 21-4624, and remand for resentencing.