(894 P.2d 213)
No. 71,691
No. 71,813

STATE OF KANSAS, *Appellee,* v. RUSSELL L. GEIS, *Appellant.*

Opinion filed March 31, 1995.

*Jeffrey L. Shaw*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Ty Kaufman*, McPherson County Attorney, *Richard N. Raleigh*, Barber County Attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before PIERRON, P.J., GERNON and LEWIS, JJ.

GERNON, J.: Russell L. Geis appeals the denial of his motions for sentence conversion under the Kansas Sentencing Guidelines Act (KSGA) in both the McPherson County District Court and the Barber County District Court.

In February 1992, Geis pled guilty to terroristic threat in Barber County. At that time, he had previously served terms after entering a plea of nolo contendere to two counts of terroristic threat and one count of unlawful possession of a firearm in McPherson County. The 4- to 15-year sentence on the McPherson County case ran concurrent with a sentence Geis received for a conviction of terroristic threat in Marion County.

The Barber County District Court sentenced Geis to a one- to five-year sentence. The sentence was consecutive to the 4- to 15-year term because Geis was on parole. His controlling sentence thus became 5 to 20 years.

The KSGA went into effect on July 1, 1993. In August 1993, the Department of Corrections (DOC) issued a sentencing guidelines report for Geis which indicated he was not eligible for conversion to a sentence under the KSGA. The guidelines report listed the following convictions as current offenses:

Terroristic Threat - 91 CR 72 - Level 9
Terroristic Threat - 85 CR 32 - Level 9

Unlawful Possession of Firearm - 86 CR 2129 - Level 8

Terroristic Threat - 86 CR 2129 - Level 9

Geis' crime severity level was set at 9. The guidelines report then listed the following convictions under Geis' criminal history:

Terroristic Threat - 85 CR 32 - Level 9 - Person Felony

Unlawful Possession of Firearm - 86 CR 2129 - Level 8 - Nonperson Felony

Terroristic Threat - 86 CR 2129 - Level 9 - Person Felony

The person felonies constituted a B criminal history classification. The combination of Geis' crime severity level and criminal history precluded him from retroactive sentence conversion because his 9-B grid box was a presumed imprisonment box.

Geis filed motions in Barber County and McPherson County objecting to the guidelines report and requesting conversion. Both courts denied Geis' motions and his motions for consideration. Geis appeals.

Geis first contends that the McPherson District Court failed to hold a conversion hearing within 60 days following his motion for hearing and, therefore, he should be granted default judgment. The record supports Geis' claim that the McPherson district court failed to satisfy the statutory mandate within K.S.A. 1993 Supp. 21-4724(d)(3). Geis filed his motion on August 17, 1993. On October 18, 1993, he filed a motion for default conversion. Inexplicably, the initial conversion hearing was not held in McPherson County until February 9, 1994, and then was continued to March 8, 1994.

K.S.A. 1993 Supp. 21-4724(d)(3) states: "In the event a hearing is requested, the court shall schedule and hold the hearing within 60 days after it was requested and shall rule on the issues raised by the parties within 30 days after the hearing."

The State contends the issue is moot so far as McPherson County was concerned because Barber County had already ruled on Geis' eligibility for conversion. The State also contends that there is no language within the KSGA which suggests that a default judgment on behalf of an inmate is the appropriate remedy should a court fail to hold a timely hearing.

Default judgment is authorized within the code of civil procedure. Provisions within the code of civil procedure apply to criminal actions when no contrary provisions exist within the code of criminal procedure. See *State v. Johnson*, 255 Kan. 140, 155, 871 P.2d 1246 (1994).

K.S.A. 60-255(a) states that default judgment can be rendered against a *party* upon a proper showing by the moving party. K.S.A. 60-255(b) allows for a default judgment to be set aside when the party in default satisfies K.S.A. 60-260(b). K.S.A. 60-260(b) indicates that default judgment may be set aside for reasons including mistake, excusable neglect, surprise, fraud, and any other reason justifying relief from the default judgment. The law favors a hearing on the claims raised by the parties in order to address the merits of the arguments and issues presented. See *Tyler v. Cowen Construction, Inc.*, 216 Kan. 401, Syl. ¶ 2, 532 P.2d 1276 (1975).

Our question here is whether any remedy exists if a district court judge fails to hold a hearing within the time constraints of K.S.A. 1993 Supp. 21-4724(d)(3), and, if so, what is the remedy.

We conclude that K.S.A. 60-255 cannot be used by Geis to force this court or any court to allow him a default judgment. K.S.A. 60-255 plainly states that it applies to the *parties*. No mention is made there, or anywhere else, of allowing a default judgment to be entered on the basis of the inexplicable delay of a court to hold a hearing, as is the case here. In addition, the court's delay in holding a conversion hearing could arguably fall under the concept of excusable neglect mentioned in K.S.A. 60-260(b).

We conclude that in the case before us, the error was harmless. We need to emphasize, however, that not in all cases would the error be harmless. Should an incarcerated individual be eligible for conversion, such delay would be inexcusable. The test for harmless error in a criminal action is whether an appellate court can find that the error does not appear to have prejudicially affected the substantial rights of the party and "substantial justice" has resulted despite the error. See *State v. Ferguson*, 254 Kan. 62, 85, 864 P.2d 693 (1993).

It is only because Geis' arguments on all of the issues raised here will not prevail on the merits that we can say that a substantial injustice has not been done by the trial court's failure to hold the hearing within the required time. The merits of Geis' argument against his preclusion from sentence conversion were not diminished by the delay only because he will not prevail.

Geis next attacks the KSGA's failure to specifically address the conversion status of an inmate with a severity level ranking that permits conversion but with a criminal history that prevents conversion.

Geis claims the Barber District Court should have converted his sentence. The State argues that his criminal history removed him from the pool of inmates the legislature intended to convert under the guidelines. When called upon to interpret the KSGA, the Kansas Supreme Court has referred to the two primary rules of statutory interpretation: First, the intent of the legislature controls when that intent can be ascertained. *State v. Gonzales*, 255 Kan. 243, 248-49, 874 P.2d 612 (1994). Second, the courts must give effect to plain and unambiguous language used within a statute by the legislature. 255 Kan. at 249.

K.S.A. 1993 Supp. 21-4724(b)(1) states:

"Except as provided in subsection (d), persons who committed crimes which would be classified in a presumptive nonimprisonment grid block on either sentencing grid, in grid blocks 5-H, 5-I or 6-G of the nondrug grid or in grid blocks 3-H or 3-I of the drug grid, pursuant to the provisions of subsection (c) of K.S.A. 1993 Supp. 21-4705 . . ., if sentenced pursuant to the Kansas sentencing guidelines act, and were sentenced prior to July 1, 1993, *shall have their sentences modified* according to the provisions specified in the Kansas sentencing guidelines act." (Emphasis added.)

The conversion process is described as follows:

"(1) Except as provided in subsection (f), the department of corrections shall conduct a review of all persons who committed crimes and were sentenced prior to July 1, 1993, and are imprisoned in the custody of the secretary of corrections as of that date. The department shall prepare a sentencing guidelines report on all such imprisoned inmates except those who have convictions for crimes which, if committed on or after July 1, 1993, would constitute a severity level 1, 2, 3 or 4 felony on the sentencing guidelines grid for nondrug crimes or a severity level 1, 2 or 3 felony on the sentencing guidelines grid for drug crimes, but, including those in grid blocks 3-H or 3-I of the drug grid, pursuant to the

provisions of subsection (c) of K.S.A. 1993 Supp. 21-4705 and amendments thereto, which shall review and determine what the person's sentence as provided by the crime severity and criminal history grid matrix established by the Kansas sentencing commission guidelines act would be as if the crime were committed on or after July 1, 1993. A copy of the report shall be transmitted to the inmate, the county or district attorney for the county from which the inmate was sentenced, and the sentencing court.

. . . .

"(5) The department of corrections shall complete and submit to the appropriate parties the report on all imprisoned inmates with a controlling sentence which, if committed on and after July 1, 1993, would constitute a severity level 9 or 10 felony on the sentencing guidelines grid for nondrug crimes by August 15, 1993.

"(6) The department of corrections shall complete and submit to the appropriate parties the report on all imprisoned inmates with a controlling sentence which, if committed on and after July 1, 1993, would constitute a severity level 7 or 8 felony on the sentencing guidelines grid for nondrug crimes by October 15, 1993.

"(7) The department of corrections shall complete and submit to the appropriate parties the report on all imprisoned inmates with a controlling sentence which, if committed on and after July 1, 1993, would be classified in grid blocks 5-H, 5-I, 6-G, 6-H or 6-I of the sentencing guidelines grid for nondrug crimes or in grid blocks 3-H or 3-I of the drug grid, pursuant to the provisions of subsection (c) of K.S.A. 1993 Supp. 21-4705 and amendments thereto, by December 1, 1993." K.S.A. 1993 Supp. 21-4724(c).

"Within 30 days of the issuance of such report, the person who committed the crime and the prosecution officer shall have the right to request a hearing by filing a motion with the sentencing court, regarding conversion to a sentence under the Kansas sentencing guidelines act to be held in the jurisdiction where the original criminal case was filed. The secretary of corrections shall be provided written notice of any request for a hearing. If a request for a hearing is not filed within 30 days of the issuance of the report, the department shall convert the person's sentence to one provided for under the sentencing guidelines and provide notification of that action to the person, the prosecution officer, and the court in the jurisdiction where the original criminal case was held. The conversion by the department of corrections to the sentencing guidelines shall be to the mid-point of the range in the applicable grid box. The secretary of corrections shall be authorized to implement a converted sentence as provided in this section, if the secretary has not received written notice of a request for a hearing by the close of normal business hours on the fifth business day after expiration of the 30-day period." K.S.A. 1993 Supp. 21-4724(d)(1).

The language of the KSGA has been interpreted to require conversion for an individual who falls within a presumptive non-

imprisonment grid box or "border box." See *State v. Gonzales*, 255 Kan. 243, Syl. ¶ 5. The Kansas appellate courts have also addressed requests for conversion by inmates who were not issued guidelines reports because they committed crimes with a severity level ranking of 1, 2, 3, or 4 on the nondrug grid or 1, 2, or 3 on the drug grid; these inmates are not eligible for conversion. See *Chiles v. State*, 254 Kan. 888, 869 P.2d 707, *cert. denied* 115 S. Ct. 149 (1994); *State v. Jones*, 19 Kan. App. 2d 913, 878 P.2d 845 (1994), *rev. denied* 255 Kan. 1009 (1994).

Geis argues that no specific statutory language directs mandatory conversion or mandatory preclusion from conversion for individuals whose severity level ranking does not preclude conversion but whose criminal history classification places him in a presumptive imprisonment grid box. Stated differently, he argues that the KSGA requires his conversion because no statute expressly forbids conversion and the KSGA directs a guidelines report be issued to all inmates similarly situated to his. We reject Geis' argument.

First, the rule of legislative interpretation, *in pari materia*, directs a court to read the provisions of the guidelines together to make them reasonable and sensible.

Second, the limited retroactivity of the KSGA is controlled by two matters: (1) the seriousness of an inmate's offense *and* (2) the seriousness of an inmate's criminal history.

Third, classification within the "conversion pool" defined by K.S.A. 1993 Supp. 21-4724(b)(1) and (2) is the exclusive means of gaining conversion to a guidelines sentence.

Fourth, a serious criminal history classification, such as Geis has, can remove an otherwise eligible inmate from the "conversion pool."

Geis next contends that the retroactivity provisions of the KSGA do not contemplate a multi-county, multi-conviction situation, and, therefore, the fact that Barber County decided not to convert his sentence should not preclude McPherson County from doing so.

The State responds that Geis is not eligible for conversion in any county because he failed to satisfy the provisions of K.S.A. 1993 Supp. 21-4724(b)(1).

K.S.A. 1993 Supp. 21-4724(c)(1) directs that a guidelines report be sent to the inmate, the county or district attorney of the county in which the inmate was sentenced, and the sentencing court. K.S.A. 1993 Supp. 21-4724(d)(1) directs that objections to an issued guidelines report be filed in the sentencing court where the original criminal action was prosecuted. The KSGA provisions do not outline a procedure for deciding the appropriate county for filing of an objection to a guidelines report that includes convictions from various counties. The silence of the KSGA on this issue, contrary to Geis' arguments, does not mean that inmates can have their sentences converted within one county while remaining ineligible for conversion in other counties.

The most important rule of statutory interpretation is that the intent of the legislature controls when that intent can be ascertained. *State v. Gonzales*, 255 Kan. at 248-49. The KSGA does not indicate that the legislature intended inmates to separately attempt to have their sentences converted within various counties.

Review of K.S.A. 1993 Supp. 21-4724 indicates a guidelines report is prepared to indicate whether an inmate with crime severity level rankings from 5-10 is eligible for conversion under the standard set forth in K.S.A. 1993 Supp. 21-4724(b)(1). The guidelines report compiles information relevant to an inmate's eligibility for conversion from various state sources. See K.S.A. 1993 Supp. 21-4724(c)(2), (3). K.S.A. 1993 Supp. 21-4711(e) indicates that even out-of-state convictions and federal and military convictions are to be converted to an appropriate classification under the KSGA.

The clear intent of the legislature in creating a process to determine retroactive conversion eligibility was simple: perform a comprehensive review of an inmate's criminal record and determine whether the inmate constituted a less serious offender. The extensive information used to prepare the guidelines report definitively designates an inmate as eligible or ineligible for sentence conversion; this classification applies to the inmate as an individual under supervision of the DOC. The designation does not apply differently from county to county. The McPherson District Court did not err by refusing Geis' request to convert his McPherson

County sentences to the exclusion of his indeterminate Marion County and Barber County sentences.

We note that the KSGA provides no indication of where an inmate ought to file an objection to a guidelines report when the report lists convictions from numerous counties.

Our reading of K.S.A. 1993 Supp. 21-4724(c)(4), which states in part that "the sentencing court shall determine" a person's criminal history classification, leads us to conclude that multi-county challenges should be filed in each appropriate district court, with each challenge accompanied by notice of any challenges raised in other counties. In addition, any challenge to a specific conviction within a criminal history listing should be filed in the sentencing court of that conviction. A general challenge to a guidelines report should be filed in the district court which imposed the sentence on the conviction event that comprises the current controlling offense.

Geis next seeks to have this court require the conversion of his McPherson County convictions, alleging that they were improperly charged and should have been charged as nonperson misdemeanor harassment by telephone.

There is nothing in the record on appeal which indicates that any argument was made to the district court attacking the McPherson County convictions for terroristic threat. Generally, issues not raised before the district court cannot be addressed on appeal. *State v. Johnson*, 253 Kan. 75, 91, 853 P.2d 34 (1993).

Appellate courts will address newly raised issues if such consideration is necessary to serve the interests of justice or prevent a denial of fundamental rights. *State v. Clemons*, 251 Kan. 473, 483, 836 P.2d 1147 (1992).

Geis raises the Supreme Court's ruling in *Carmichael v. State*, 255 Kan. 10, 872 P.2d 240 (1994). Carmichael raised, for the first time on appeal, a challenge to his rape convictions because the more specific offense of aggravated incest should have been charged. The Kansas Supreme Court evaluated the issue, despite the fact that it had not been raised at the district court level.

Geis' challenge to this issue is controlled by the recent Supreme Court decision of *LaBona v. State*, 255 Kan. 66, 872 P.2d 271

(1994). In *LaBona*, the Kansas Supreme Court held that an appellant's guilty plea constituted a waiver of the right to challenge the State's failure to charge the specific offense of aggravated incest. Therefore, LaBona acquiesced in his convictions.

Geis pled guilty to two disputed convictions of terroristic threat. *LaBona* controls, and Geis' argument on this issue is without merit.

Finally, Geis challenges the use of convictions as criminal history, despite the fact that his aggregate sentence includes sentences from these convictions.

Geis is serving a controlling sentence of 5-20 years. His controlling sentence is comprised of his sentences from his Barber County, McPherson County, and Marion County convictions. The DOC lists all Geis' convictions as current offenses on his guidelines report. The guidelines report then lists all his convictions, except the most recent, to compute his criminal history classification. The report omits one of the McPherson County terroristic threat convictions from the list of all his convictions and the criminal history list.

The issue is whether, under the guidelines, convictions that make up Geis' controlling sentence are all considered part of the current offense and cannot be used to compute a criminal history classification. K.S.A. 1993 Supp. 21-4724(c)(1) directs the DOC to review inmates sentenced prior to July 1, 1993, who are not precluded by a serious severity level ranking and to prepare a guidelines report that "shall review and determine what the person's sentence as provided by the crime severity and criminal history grid matrix established by the Kansas sentencing commission guidelines act would be as if the crime were committed on or after July 1, 1993."

The KSGA unfortunately fails to indicate what constitutes "the crime" for conversion purposes. The reference is clear for individuals serving a distinct criminal sentence who have satisfied the sentences imposed for past convictions. The designation is not so clear for individuals with a controlling sentence that includes sentences from separate convictions imposed over a period of time.

The intent of the legislature governs when it can be ascertained. *Gonzales*, 255 Kan. at 248-49. The legislature presumably intends that a statute be read and construed to circumvent an absurd result. *Todd v. Kelly*, 251 Kan. 512, 520, 837 P.2d 381 (1992). Also, the provisions within an act are to be construed together to effectuate a sensible and consistent construction of the legislation. See 251 Kan. at 516.

The general intent of the legislature concerning conversion to a guidelines sentence is expressed within K.S.A. 1993 Supp. 21-4724(b)(1). K.S.A. 1993 Supp. 21-4724(b)(1) states that inmates shall be eligible for conversion if they committed crimes that would be classified in a presumptive nonimprisonment grid box or border box "if sentenced pursuant to the Kansas sentencing guidelines act, and were sentenced prior to July 1, 1993."

For KSGA sentencing purposes, a crime breaks down to a conviction event, defined as "one or more felony convictions occurring on the same day and within a single court. These convictions may result from multiple counts within an information or from more than one information." K.S.A. 1993 Supp. 21-4703(c). When a person is convicted of more than one crime the severity level ranking is determined by the conviction with the most serious ranking. K.S.A. 1993 Supp. 21-4707. For criminal history purposes, however, each separate conviction is calculated in the criminal history score regardless of the concurrent or consecutive nature of the sentences. K.S.A. 1993 Supp. 21-4710(c).

Application of the KSGA to Geis' criminal convictions reveals three separate conviction events. His earliest conviction event was his 1985 Marion County conviction for terroristic threat. His second conviction event occurred in 1986 when he pled guilty to two counts of terroristic threat and one count of unlawful possession of a firearm in McPherson County. His most recent conviction was his 1991 conviction for terroristic threat in Barber County.

The use of Geis' most recent conviction event as the controlling offense was consistent with the intent of the KSGA. Pursuant to K.S.A. 1993 Supp. 21-4724(b)(1), if Geis had been sentenced for his 1991 conviction for terroristic threat as if the KSGA were in

effect, his conviction event severity level would be a 9. His correct criminal history would include three person felonies and one non-person felony, although the guidelines report only listed two person felonies. Thus, his criminal history score would be an A or a B. Placement at either a 9-A or 9-B grid box would leave Geis in a presumptive imprisonment grid box. K.S.A. 1993 Supp. 21-4724(b)(1) dictates that Geis is not eligible for conversion.

Affirmed.