NOT DESIGNATED FOR PUBLICATION

No. 126,636

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GEORGE EUGENE PHILLIPS JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID KAUFMAN, judge. Oral argument held July 9, 2024. Opinion filed December 20, 2024. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., HURST and COBLE, JJ.

PER CURIAM: An incident in a Braum's parking lot between George E. Phillips Jr. and his ex-wife culminated in Phillips' arrest. As a result of those events, Phillips now appeals his jury convictions of one count of aggravated assault, one count of aggravated battery, two counts of criminal threat, and one count of aggravated kidnapping. He presents multiple issues on appeal, none of which we find persuasive, particularly considering recent Kansas Supreme Court precedent. First, although Phillips contends the State failed to present sufficient evidence to support his conviction of aggravated kidnapping, we find the bodily harm inflicted on the victim sufficient to support his

1

conviction. He also argues the district court erred by failing to provide a jury instruction for the definition of "bodily harm," but we find this does not rise to the level of clear error. Third, Phillips maintains the district court failed to provide jury instructions for the lesser included offenses of aggravated assault and aggravated battery, but given the evidence presented at trial and the jury's necessary credibility determinations, the lack of instructions does not amount to reversible error. Fourth, Phillips claims the prosecutor committed three reversible errors in closing arguments, but we conclude although there was one error, it was harmless. Finally, because we find only one accumulable error, his argument that cumulative error denied him of a fair trial is unavailing. For these reasons as expanded upon below, we affirm Phillips' convictions.

FACTUAL AND PROCEDURAL BACKGROUND

Phillips and his ex-wife, referenced here by the pseudonym Jane, were divorced but had been living together for a month or two, until he eventually moved out. In March 2021, Jane texted Phillips to let him know some important mail for him had arrived at her home. That same evening, Phillips arrived at Jane's house to retrieve the mail. She initially refused to open the door and asked him to wait while she finished working, but then opened the door slightly to hand the mail to Phillips without letting him into the house.

After retrieving the mail, Phillips stayed on the porch outside Jane's house and continued to text and call her. He sent her angry text messages and threatened to kill her children if she did not drive him to a nearby Braum's. Jane noticed Phillips was carrying a blue backpack, and she was concerned because, although she had never seen him with a gun, he had told her that he kept one in his blue bag. She decided to take him to Braum's to get him away from her children and left the house to find Phillips waiting for her next to her vehicle. Phillips got into the passenger side of the vehicle, and Jane drove him to Braum's.

2

Trial testimony by Jane and Phillips diverged starkly on what transpired once they arrived at the Braum's parking lot. According to Jane, she parked her vehicle in a parking spot, but Phillips wanted to go through the drive-through, and an argument ensued. During the argument, Jane's friend, to whom we refer as Friend One, called her on her cellphone, and the call displayed on the vehicle's information system screen. Phillips took out a screwdriver and, holding it to Jane's neck, threatened to stab her if she answered her cellphone. Jane suggested she answer the call to let her friend know that she was okay, but Phillips continued to threaten her, so the call rang until it stopped.

Jane then turned her car off as the two continued to argue. At some point, Phillips threatened to call one of his girlfriends to come beat Jane up, and as soon as he placed the call, Jane jumped out of the car and pretended to call the police, hoping this would scare Phillips away. Instead of the police, she called Friend One but after Phillips also got out and chased her around the vehicle, Jane was forced to put away her cellphone. She left the cellphone on, however, and later discovered that Friend One had answered the call and remained on the line.

During trial, the State called as witnesses two of Jane's friends, including Friend One, who were part of a group of three friends together the evening of the incident. Friend Two testified the group called 911 when they stopped receiving text messages from Jane and she did not answer her cellphone. When Jane called Friend One, Friend Two was already on the phone with emergency services. The friends placed Jane's call on speaker phone and set it next to the 911 call so that dispatch could hear what was happening with Jane. Friend One also testified that although Jane did not respond to her questions, the group of friends could hear on speaker phone parts of what was happening. Friend One said she heard Jane screaming, "'Get off of me,'" and "'Leave me alone,'" and a male's voice, who she assumed was Phillips, telling Jane to drive.

3

Jane testified that, after putting away her cellphone, she considered but decided against running away to a nearby McDonald's because she feared Phillips would catch her and make the situation worse. While running around the vehicle, Jane shouted for help to a passerby coming out of Braum's, but then saw Phillips reach for his blue bag in the backseat. Fearing that Phillips would hurt someone else, she got back into the driver's seat.

As soon as Phillips got back into the vehicle's passenger seat, Jane again jumped out of the vehicle. According to Jane, Phillips ran around the vehicle to the driver's side door and jabbed Jane five times with the screwdriver—four times in her side and once in her neck. Jane again got back into the vehicle thinking that Phillips might calm down and that running away might escalate matters. Phillips first got into the rear seat, directly behind her, and held the screwdriver to her neck. But observing the approach of police officers, he jumped over into the front seat, trying to retrieve something from his pants. Jane believed he was trying to pull out his gun.

Jane tried to jump out, but the vehicle door was locked, and she felt Phillips' legs wrapped around her, squeezing her, keeping her from leaving. Once a police officer arrived at her door, she managed to hit the unlock button and open it. Phillips still had his legs around Jane, but she heard the police officers yell "gun," and she leaned out of the vehicle and fell to the ground. Jane testified she never saw the gun, but as she rolled out of the vehicle, the officers started shooting Phillips through the vehicle.

In all, four police officers responded to the scene. Officers Amanda Darrow and Adam Ward each testified regarding their roles in their response and their individual observations. Officer Darrow saw a man, later identified as Phillips, kicking as well as striking the woman in the driver's seat. Phillips appeared to be kicking the victim with one leg in front and one leg behind the victim and refused to exit the vehicle. Officer Ward's account was consistent with that of Officer Darrow. Officer Ward could see a

4

struggle between a female in the driver's seat and a male in the front passenger seat. Officer Ward saw the man situated horizontally across the center console, with his feet kicking the woman. The officer saw the driver's side door open, but it seemed the woman was unable to get out. He realized the man had his legs around the woman like scissors, which kept her from getting out. Officer Ward testified he helped the woman out, and she fell about 10 feet out of the vehicle as the man was still inside the car, kicking her as she fell out.

Jane was taken to the police department, where the police took photos of the injuries to her neck, sides, shoulder, and arms. Phillips was ultimately charged with aggravated assault of a law enforcement officer, aggravated assault, aggravated battery, two counts of criminal threat, and aggravated kidnapping.

Officer Ward testified he later learned the firearm Phillips possessed was an airsoft or BB gun, and not an actual firearm. State's witness Hannah Holly, the crime scene investigator, also testified that, although the gun was not a firearm but a pellet gun, there was no indication from afar that the gun was not a real firearm. Holly also testified a screwdriver was found in the passenger's seat of the victim's vehicle.

Phillips testified to a different variation of this narrative. He agreed he went to Jane's house that night to retrieve his mail and money she was holding for him, and that she asked him to wait until she was off work. Phillips testified that he sat down on the porch to wait and admitted to exchanging some text messages with Jane while he waited, some of which were "heated." After Phillips had waited 30-45 minutes, Jane came out, and they drove to Braum's without incident. Phillips testified his two bags were in the backseat of Jane's vehicle.

Once Jane parked in the Braum's parking lot, Phillips asked her to go through the drive-through, but then he received a call from another woman. Phillips said Jane started

"going off" and telling him to get out of the car. He insisted she take him back to the hotel where he was living, but while they were arguing, the police arrived. Phillips claimed that neither he nor Jane ever exited the vehicle while parked at Braum's.

Phillips testified when he suddenly saw the police, he was scared for his life and in "fight-flight" mode. He tried to get into the driver's seat by turning sideways and trying to kick Jane out of the car so he could get away. Phillips testified that when the police tried to remove him from the vehicle, he wanted to get rid of the pellet gun because he did not want to have the police find it on him. Phillips swore he never raised the gun and when he turned to get the gun and tried to throw it in the backseat, he was shot in the back by the police. Phillips said that he never saw the screwdriver found inside the vehicle and that he never used it against Jane. Phillips also testified that the only physical harm he caused Jane was when he kicked her as he was trying to get her out of the car.

After deliberations, the jury acquitted Phillips of aggravated assault of a law enforcement officer but convicted him on the five other counts as charged. The district court sentenced him to a controlling prison term of 656 months.

Phillips timely appeals.

### THE STATE PRESENTED SUFFICIENT EVIDENCE TO SUPPORT AN AGGRAVATED KIDNAPPING CONVICTION

On appeal, Phillips first argues that the State failed to present sufficient evidence to support his conviction for aggravated kidnapping under K.S.A. 21-5408(b). To sustain that conviction, the State was required to prove: (1) Phillips took or confined Jane by force, threat, or deception; (2) he did so with the intent to hold her to inflict bodily injury or to terrorize her; and (3) he inflicted bodily harm on her. K.S.A. 21-5408(b). As part of his sufficiency claim, Phillips makes two separate arguments, asserting the State failed to

6

establish either (1) the "bodily harm" or (2) the "taking or confining" elements of the crime.

1.  *Standard of Review*

When reviewing a sufficiency of the evidence challenge, appellate courts "'review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). But an appellate court does not reweigh evidence, decide any conflicts in the evidence, or determine the credibility of witnesses. 313 Kan. at 209.

The appellant bears a high burden to succeed on a sufficiency of the evidence claim, and "only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

2.  *The victim's injuries constitute "bodily harm" as defined by our Supreme Court.*

When "bodily harm is inflicted upon the person kidnapped," a kidnapping crime is elevated to an aggravated kidnapping, resulting in the highest severity level of a felony conviction. K.S.A. 21-5408(b), (c)(2). Phillips first argues that the State failed to present sufficient evidence to show Jane suffered bodily harm. He claims the minor injuries she suffered were trivial and did not constitute legally defined bodily harm.

Relying on longstanding precedent from our Supreme Court, Phillips asserts that "'[o]nly unnecessary acts of violence upon the victim and those occurring after the initial abduction constitute 'bodily harm.'" *State v. Royal*, 234 Kan. 218, 222, 670 P.2d 1337 (1983). Phillips argues that as a matter of law, Jane did not suffer "bodily harm" because

insignificant bruises or injuries resulting from the act of kidnapping are not the type of harm the Legislature intended to warrant a more severe penalty, citing *State v. Peltier*, 249 Kan. 415, 419, 819 P.2d 628 (1991). He claims her injuries were at most incidental to any taking alleged by the State. He also reasons that the State's alternative theory—that he confined Jane to the vehicle—also fails because any injuries from the screwdriver outside the vehicle would have occurred before any confinement. If the injuries came before the confinement, the injuries would not support a finding of "bodily harm" sufficient to prove aggravated kidnapping.

The State agrees our Supreme Court has held the "bodily harm" element may not be satisfied by trivial injuries incidental to the taking or confinement. But the State argues our Supreme Court's decisions excluding trivial injuries, such as in *Peltier* and *Royal*, were wrongly decided and this exception is a judicially-created rule inconsistent with the plain language of the statute. The State also asserts that Phillips' reliance on *Royal* is flawed, because our Supreme Court held that when a knife or firearm is used to perpetrate a kidnapping, the resulting injury constitutes bodily harm as a matter of law, and since the screwdriver in this case served the same functional purpose as a knife in *Royal*, the *Royal* decision works against his defense. Finally, the State also points out that Jane sustained some of her injuries while being confined in her vehicle.

2.1 *New Supreme Court precedent applies.*

After this case was fully ripe for decision, our Supreme Court examined another aggravated kidnapping case for sufficient evidence of bodily harm. *State v. Moore*, 319 Kan. 557, 561, 556 P.3d 466 (2024). Although the final *Moore* decision was unavailable to either us or the parties here prior to briefing, its pending nature and potential application were discussed during oral argument. The *Moore* decision is now binding precedent and directs our discussion.

8

In *Moore*, much as here, the accused argued the evidence at trial could not support a finding of bodily harm, as a matter of law, because precedent "excludes trivial injuries likely to result from a simple kidnapping" and the victim suffered only minor abrasions. 319 Kan. at 561. The Supreme Court began by examining "what the statute means by 'bodily harm.'" 319 Kan. at 563. Noting the criminal statutes do not define the term, the court looked to dictionary definitions, explaining: "Black's Law Dictionary defines bodily harm as '[p]hysical pain, illness, or impairment of the body' [and] Merriam-Webster defines it as 'any damage to a person's physical condition including pain or illness.'" 319 Kan. at 563 (quoting Black's Law Dictionary 861 [11th ed. 2019] and Merriam-Webster Online Dictionary [defining bodily harm as bodily injury]). Although the court outlined the evolution of the definitions of bodily harm found in precedent, it also noted that "instead of interpreting the statute based on its ordinary and common meaning, Moore urge[d the court] to apply the definition established by . . . precedent," indicating it may be moving away from those definitions. 319 Kan. at 563-64 (discussing *Royal*, 234 Kan. at 222; *State v. Taylor*, 217 Kan. 706, 538 P.2d 1375 [1975]; *State v. Brown*, 181 Kan. 375, 389, 312 P.2d 832 [1957]). Following this discussion, the court concluded:

> "One may quibble whether our caselaw ignores the statute's plain meaning, but that is of little concern under the facts of Moore's case. We view the evidence in the light most favorable to the prosecution and hold a reasonable jury could find he caused M.M. bodily harm. There is no factual dispute she had physical injuries—she *suffered abrasions and felt pain* when Moore dragged her about 25 feet across pavement and grabbed her near the street. We hold sufficient evidence supports this aggravated kidnapping conviction." (Emphasis added.) *Moore*, 319 Kan. at 564.

### 2.2 *Sufficient evidence supports a finding of bodily harm.*

Following our Supreme Court's lead, we have little trouble similarly finding that sufficient evidence supported Phillips' conviction here. First, we find his challenge to

how the order of events affects any finding of bodily harm unpersuasive. Jane's testimony supported a finding that, at a minimum, the screwdriver marks on her neck and the injuries to her arm from the fall occurred after she was confined inside the vehicle the final time. And, whether the taking or confinement occurred before or followed the attack with the screwdriver, we must consider all the evidence of Jane's injuries, just as the jury did. Phillips cannot now "cherry-pick the State's [theory] to limit the sufficiency analysis on appeal." 319 Kan. at 562.

And, while arguably some injuries were invoked by what was a household tool being utilized as a dangerous weapon, we do not have to go so far as to find bodily harm as a matter of law under the *Royal* framework, as the State suggests. See *Royal*, 234 Kan. at 222 (finding where a knife or firearm is used during a kidnapping and the victim is wounded by the instrument, the resulting injury constitutes bodily harm as a matter of law). Here, the injuries Jane sustained were more pronounced than the abrasions and pain demonstrated in the *Moore* case. Not only did Jane testify to her injuries, but the State introduced photos of the marks on her neck, sides, shoulder, and arms into evidence. Viewing the evidence in the light most favorable to the State, and under the directive of our Supreme Court in *Moore*, we must conclude sufficient evidence supports the bodily harm element of the aggravated kidnapping conviction.

3. *There was sufficient evidence to support kidnapping by taking or confining.*

In his initial briefing, Phillips next argued he never took or confined Jane, and the State failed to produce evidence showing otherwise. He pointed out that Jane claims she left and reentered her vehicle multiple times, and police body camera footage corroborates his testimony that he was trying to push Jane out of the car when the police arrived, not trying to keep her confined inside. In his initial briefing, Phillips also argued because the State presented alternative means of committing aggravated kidnapping— either by taking or confining—his conviction must be reversed if we find either of the

10

alternative theories unsupported by sufficient evidence. But, in his later response to State's Notice of Additional Authority, Phillips acknowledged the Supreme Court's recent decision in *State v. Garcia-Martinez*, 318 Kan. 681, 693, 546 P.3d 750 (2024), which found "taking" and "confining" no longer represent alternative means of completing a kidnapping. Given the *Garcia-Martinez* decision, Phillips abandons his alternative means argument.

Viewing the evidence in the light most favorable to the State, as we are required to do, there was sufficient evidence to show that Phillips either took or confined Jane to perpetrate a kidnapping. Jane's testimony demonstrated although she entered and exited the vehicle, she did so out of fear for herself or others—first entering the vehicle out of fear for her children, and later reentering it out of fear for a bystander. She testified to being unable to answer the cellphone due to the screwdriver at her neck and being chased when outside the vehicle. As for whether Phillips was holding Jane or pushing her out of the vehicle when police arrived, Jane's trial testimony was consistent with Officers Darrow's and Ward's testimony, showing Phillips' legs were wrapped around Jane, preventing her from leaving the vehicle until Officer Ward helped her. Phillips' arguments largely ask us to reweigh the evidence and the jury's credibility assessments, which are tasks we may not undertake.

Observing the evidence in the light most favorable to the State, a reasonable fact-finder could have determined that Phillips took or confined Jane as required under K.S.A. 21-5408.

4. *Conclusion*

For the preceding reasons, when viewed in the light most favorable to the State, the evidence points to the conclusion that a reasonable fact-finder could have found that Phillips committed aggravated kidnapping. Certainly, we cannot say the testimony was so

11

incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt under the legal standards we are required to follow. As a result, we find there was sufficient evidence to support Phillips' conviction for aggravated kidnapping.

## THE DISTRICT COURT DID NOT ERR BY FAILING TO PROVIDE A DEFINITION OF "BODILY HARM" IN ITS JURY INSTRUCTION FOR AGGRAVATED KIDNAPPING

Next, Phillips argues the district court erred by failing to provide a definition of "bodily harm" in the jury instructions because the omission likely changed the outcome of the trial. Once again, our Supreme Court's recent decision in *Moore* guides our analysis. 319 Kan. at 569-70.

### 1. *Standard of Review*

When analyzing jury instruction issues, appellate courts follow a three-step process: (1) determining whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, that is, whether the error can be deemed harmless. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021); see also K.S.A. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.").

At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record. *Holley*, 313 Kan. at 254. In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most

12

favorable to the defendant or the requesting party, that would have supported the instruction. 313 Kan. at 255.

Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step. 313 Kan. at 254. When a party fails to object to a jury instruction before the district court, an appellate court reviews the instruction to determine whether it was clearly erroneous. K.S.A. 22-3414(3). For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to show both error and prejudice. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021). If the challenging party preserved the issue below, an appellate court applies one of two harmless error tests. If the instructional error impacts a constitutional right, an appellate court assesses whether the error was harmless under the federal constitutional harmless error standard, i.e., whether there was no reasonable possibility that the error contributed to the verdict. When no constitutional right is impacted, an appellate court assesses whether there is no reasonable probability the error affected the trial's outcome in light of the entire record. *Holley*, 313 Kan. at 256-57.

Phillips concedes he did not object at trial to the lack of a bodily harm instruction. As a result, if we find that a bodily harm instruction would have been legally and factually appropriate, then we must determine whether the failure amounted to clear error. *Crosby*, 312 Kan. at 639.

2. *The invited error doctrine does not apply.*

As a threshold issue, the parties disagree on whether Phillips' trial counsel invited any error which may have occurred in the failure to give a definitional instruction on

13

bodily harm. "Whether the doctrine of invited error applies is a question of law subject to unlimited review." *State v. Stoll*, 312 Kan. 726, 735, 480 P.3d 158 (2021).

Here, Phillips did not request that the court provide a "bodily harm" instruction and did not object to the lack of a bodily harm instruction at trial. When the court was considering both the lesser included kidnapping instruction and the definition of bodily harm during the instruction conference, Phillips' trial counsel stated the lesser included kidnapping instruction was not necessary, and then mistakenly asserted in "aggravated kidnapping [there] doesn't have to be [a] specific kind of harm, it just has to be harm. So, I agree also that there's no need for an instruction in that regard." The State subsequently told the court that *Royal* defined "bodily harm," but it would not be appropriate here because there was no dispute that there was "bodily harm." Phillips' counsel did not add or object to the State's reasoning.

The invited error doctrine precludes appellate review of an error that was invited by the defendant unless the error is a structural constitutional error. *State v. Fleming*, 308 Kan. 689, 701-02, 423 P.3d 506 (2018). There is no bright-line rule for applying the invited error doctrine. The party's actions inducing a court to make the claimed error and the context in which those actions occurred must be scrutinized to decide whether to employ the doctrine. *State v. Douglas*, 313 Kan. 704, 707, 490 P.3d 34 (2021). Simply put, a litigant may not invite an error and then complain of the error on appeal. *State v. Green*, 315 Kan. 178, 183, 505 P.3d 377 (2022). Moreover, the mere failure to object to a proposed instruction does not trigger the doctrine, but when a defendant actively pursues what is later argued to be an error, the doctrine applies. The doctrine's application turns on whether the instruction would have been given—or omitted—but for an affirmative request to the court for the outcome later challenged on appeal. The ultimate question is whether the record reflects the defense's action in fact induced the court to make the claimed error. *State v. Roberts*, 314 Kan. 835, 846, 503 P.3d 227 (2022); *Douglas*, 313 Kan. at 707.

14

Phillips argues that this was a misunderstanding of law by defense counsel, so the invited error doctrine should not apply. Yet the doctrine generally does not focus on the subjective understanding or intentions of the party about the legal implications of their actions. That said, even if the misunderstanding was not intentional or was based on an incorrect interpretation of the law, the invited error doctrine can apply if a party requests or agrees to a jury instruction that they later claim was erroneous on appeal. The key factor is whether the party took affirmative action that led to the adoption or omission of the disputed instruction, not necessarily their understanding or intentions behind these actions.

Here, there is no showing that Phillips took affirmative action to have the "bodily harm" definition removed from the jury instructions. The district court's inquiry was initially about whether to include the lesser included offense of kidnapping, not whether a "bodily harm" definition was required. The State opined that it was clear there was bodily harm based on the facts and the lesser included offense would not be simple kidnapping but rather criminal restraint. Phillips' counsel in response did not request the lesser included offense instruction for simple kidnapping and acquiesced to the State's argument that the "bodily harm" definition was unnecessary. Phillips also did not include a "bodily harm" definition in his proposed jury instructions. It seems evident, then, that Phillips' counsel did not consider at any point that the "bodily harm" definition was necessary, but this alone does not amount to an inducement to error.

Although this presents a close call, on a review of the record, it does not appear the district court would not have omitted the instruction but for an affirmative request by the defense. As a result, Phillips did not invite the claimed error.

3. *Even if the "bodily harm" instruction were factually and legally appropriate, its omission does not rise to the level of clear error.*

The next step of analyzing jury instruction issues is to determine whether the instruction was legally and factually appropriate. To be legally appropriate, a jury instruction must fairly and accurately state the applicable law. *State v. Kleypas*, 305 Kan. 224, 302, 382 P.3d 373 (2016). The court provided the following jury instruction for aggravated kidnapping at trial:

"The defendant is charged with aggravated kidnapping. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:
"1. The defendant took or confined [the victim] by force, threat, or deception.
"2. The defendant did so with the intent to hold [the victim] to inflict bodily injury on or to terrorize [the victim].
"3. Bodily harm was inflicted upon [the victim].
"4. This act occurred on or about the 18th day of March, 2021, in Sedgwick County, Kansas.

"A defendant act [*sic*] intentionally when it is the defendant's conscious objective or desire to do the act complained about by the State."

The Kansas Supreme Court ""'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'"" *State v. Zeiner*, 316 Kan. 346, 353, 515 P.3d 736 (2022). And the utilized instruction closely mirrors the correlating Pattern Instructions of Kansas (PIK), PIK Crim. 4th 54.220 (2019 Supp.).

But the comments section of the PIK also includes the definition of "bodily harm," as established in *Royal*, and states "if there is an issue of fact as to whether bodily harm occurred, the jury instruction should include the definition of bodily harm." PIK Crim.

16

4th 54.220, Comment (2020 Supp.). As such, the "bodily harm" instruction would have been legally appropriate in this context.

Next, a jury instruction is factually appropriate if it is "'supported by the particular facts of the case at bar.'" *Kleypas*, 305 Kan. at 302. As evidenced by the prior sufficiency argument, the parties dispute whether Jane's injuries satisfied the "bodily harm" element of the statute, but their disagreement regarding the factual appropriateness of the jury instruction is a bit more nuanced.

Phillips argues the "bodily harm" instruction was factually appropriate because the fact that he pleaded not guilty made the existence of "bodily harm" a question of fact for the jury. He asserts that since "bodily harm" was the material fact that differentiated between aggravated kidnapping and the lesser included offense of criminal restraint, the definition of "bodily harm" would have been factually appropriate. Phillips claims it was critical for the jury to know that "bodily harm" does not include "trivial injuries likely to result from any forcible kidnapping by the very nature of the act," especially here, where the evidence showing bodily harm to the victim was subject to interpretation. The State responds that the "bodily harm" definition was not factually appropriate because Jane's injuries from the screwdriver constituted "bodily harm" as a matter of law under *Royal*.

It is true that the type of injury constituting "bodily harm" under K.S.A. 21-5408 has been defined specifically under Kansas precedent. So, an instruction on this specific definition seems to have been factually appropriate. But even if we assume the instruction was factually appropriate, Phillips' argument fails on the final prong of analysis—that is, he cannot show clear error.

If we find the instruction factually and legally appropriate, we must next determine whether clear error occurred—that is, whether we are firmly convinced that the jury would have reached a different verdict had it been given the "bodily harm"

17

instruction. The party claiming clear error has the burden to show error, and our review is de novo based on the entire record. *Moore*, 319 Kan. at 570.

We have already concluded sufficient evidence supports the bodily harm element of aggravated kidnapping because Phillips poked and stabbed at Jane with a screwdriver, leaving visible injuries. As a result, we are not firmly convinced the outcome of the trial would have been different had the bodily harm definition instruction been given.

### THE DISTRICT COURT DID NOT CLEARLY ERR BY FAILING TO PROVIDE LESSER INCLUDED OFFENSE INSTRUCTIONS

Phillips next contends that the district court erred by failing to give jury instructions for the lesser degrees of the charged offenses of aggravated assault and aggravated battery. During trial, Phillips did not object to the omission of an instruction for the lesser included offense of simple assault; in fact, an instruction for simple assault was never discussed. Nor did Phillips include either of the lesser included offenses of simple assault or simple battery in his proposed jury instructions. The district court did inquire about including a simple battery instruction, but Phillips' counsel rejected the district court's suggestion. Under Phillips' defense theory, the crime either happened or it did not, so the lesser instruction was not warranted. After hearing from both parties, the district court found that the instruction for the lesser included offense of simple battery was not factually appropriate, and Phillips did not object to the omission of the instruction.

Again, Phillips did not request the instructions or object to their omission at trial. As a result, by applying the analytical framework articulated in the previous section, we review the issue for clear error. *State v. Owens*, 314 Kan. 210, 235, 496 P.3d 902 (2021) ("[I]f a defendant fails to object to the instructional error below, the clear error standard is applied to assess prejudice.").

18

1. *Invited error is a close question as to the simple battery instruction.*

We first review the threshold question of whether Phillips' challenge to the omission of the simple battery instruction is precluded by invited error. As detailed more thoroughly above, whether the doctrine of invited error applies is a question of law subject to unlimited review. *Stoll*, 312 Kan. at 735.

At trial, Phillips did not ask the district court to provide an instruction for the simple battery charge as the lesser included offense of aggravated battery. But the district court did consider such an instruction, and Phillips' trial counsel rejected the district court's consideration. Specifically, Phillips' counsel said he "consider[ed] that [possible instruction] last night, but I believe that in light of the argument that the defense is making . . . either it happened or it did not," and "I don't think under the defense's theory the lesser is warranted." Phillips' counsel did not object to the district court's conclusion to exclude the instruction for the lesser included offense of simple battery. Like his argument in the previous issue, Phillips argues that this was a misunderstanding of law by the defense counsel and so the invited error doctrine should not apply.

The ultimate question is whether the record reflects defense counsel's action induced the court to make the claimed error. *Roberts*, 314 Kan. at 846; *Douglas*, 313 Kan. at 707. The key factor is whether the party took affirmative action that led to the adoption or omission of the disputed instruction, not necessarily the understanding or intentions behind these actions.

Here, although on the one hand it seems Phillips took affirmative action by rejecting the district court's offer to include the lesser included offense of simple battery, a review of the entire context of the discussion reveals the district court was disinclined to include the instruction regardless of defense counsel's concession. The district court concluded, "I do not believe, quote, 'there is some evidence which would reasonably

19

justify a conviction of the lesser included crime of battery.' And that is the standard. So, the instruction will just be as is," that is, without the lesser included offense of simple battery. Although his defense counsel's statements at trial toe a fine line, we continue to address the merits of Phillips' arguments and do not reject his argument on invited error.

2. *The district court erred by omitting the lesser included offense instructions.*

In the end, our invited error analysis is extraneous, because Phillips is not entitled to relief on his claims of instructional error for either lesser included offense.

Phillips was charged with, and convicted of, aggravated battery under K.S.A. 2020 Supp. 21-5413(b)(1)(B) and aggravated assault under K.S.A. 2020 Supp. 21-5412(b)(1). Under K.S.A. 2020 Supp. 21-5413(b), to be convicted of aggravated battery, the State must have proven Phillips knowingly caused great bodily harm to Jane with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted. As used by the prosecution in this case, K.S.A. 21-5412(b)(1) defines aggravated assault as simple assault—knowingly placing Jane in reasonable apprehension of bodily harm—committed with a deadly weapon.

The State does not dispute that the jury instructions for the lesser included offenses of simple assault and simple battery are legally appropriate under *State v. Williams*, 308 Kan. 1439, 1458, 430 P.3d 448 (2018). That is, when a defendant is charged with aggravated assault and aggravated battery, a court must generally provide instructions for the lesser included offenses of simple battery and simple assault if there is evidence that could reasonably justify a conviction for these lesser offenses. *Williams*, 308 Kan. 1439, Syl. ¶ 7. So, when a defendant is charged with aggravated assault and aggravated battery, and there is evidence supporting the possibility of lesser harm or lower culpability than required for the aggravated charges, courts are generally required to provide jury instructions on the lesser included offenses of simple battery and simple

20

assault. *Williams*, 308 Kan. at 1458; *State v. Haygood*, 308 Kan. 1387, 1408, 430 P.3d 11 (2018); see K.S.A. 22-3414(3).

But the State argues that the instructions were factually inappropriate, for similar reasons for which defense counsel declined the lesser included battery instruction: because the crux of Phillips' defense at trial was simply that he did not use the screwdriver at all—in fact, his testimony was that he had never seen it. The only physical harm he conceded to at trial was kicking Jane out of the car.

Our Supreme Court has recently analyzed a similar circumstance in the context of the use of a vehicle as the deadly weapon to facilitate an aggravated assault. *State v. Lowe*, 317 Kan. 713, 719, 538 P.3d 1094 (2023). As the circumstance facing us here, albeit with the addition of the aggravated battery charge, in *Lowe*, the court emphasized "the only difference between aggravated assault and simple assault is the deadly weapon element, which is not statutorily defined." 317 Kan. at 719. But like here, with a household tool such as a screwdriver, in *Lowe*, the court examined how a vehicle is not in and of itself necessarily always a deadly weapon. It found "[t]his is a factual question, meaning the determination of whether Lowe's car constituted a deadly weapon under the circumstances was a jury question." 317 Kan. at 719.

Because it was a factual question whether Phillips' actions turned the screwdriver into a deadly weapon under the circumstances presented in this case, the jury should have been given the option of choosing between simple and aggravated assault, and simple and aggravated battery, even if Phillips did not request the lesser included offense instructions. See 317 Kan. at 720. And this rationale applies regardless of Phillips' defense theory. See 317 Kan. at 720 (citing *State v. Williams*, 303 Kan. 585, 599, 363 P.3d 1101[2016] holding that a lesser included offense instruction is not foreclosed even if it is inconsistent with either the evidence presented by the defense or the theory advanced by the defense).

21

The district court erred, then, by failing to give the simple assault and simple battery instructions. But this does not end our examination. We must proceed to determine whether the errors are reversible.

3.  *The district court's errors are not reversible.*

Phillips concedes he did not request either the simple assault or simple battery instruction. So, as outlined above, our review under a clear error standard requires us to decide whether we are firmly convinced the jury would have reached a different verdict had the errors not occurred. See K.S.A. 22-3414(3). We examine the issue de novo on a review of the entire record, and Phillips bears the burden to demonstrate reversibility. *Lowe*, 317 Kan. at 720-21.

Given the two very different versions of events presented to the jury, it is apparent the jury accepted Jane's version of events, which was corroborated by other evidence, and rejected Phillips' claims that he did not use the screwdriver at all. Jane claimed she was stabbed multiple times in her side and in her neck, which was supported by the photographic evidence. This credibility determination, which is entirely a function of the jury, could support that the use of the screwdriver as a weapon both knowingly placed Jane in reasonable apprehension of bodily harm and was used in a manner in which great bodily harm could be inflicted. Based on the evidence presented in the record, we are not firmly convinced the jury would have reached a different verdict had the district court given a simple assault or a simple battery instruction. Phillips fails to meet his burden in showing reversible clear error. As a result, Phillips' convictions of aggravated assault and aggravated battery are affirmed.

THE PROSECUTOR DID NOT COMMIT REVERSIBLE ERROR IN CLOSING ARGUMENT

Phillips' final challenges focus on the prosecutor's conduct during closing arguments. He argues the prosecutor committed error by misstating the law, misstating the evidence, and inappropriately shifting the burden of proof during three statements, all focused on the aggravated kidnapping charge. Phillips first argues the State committed prosecutorial error by misstating the law when the prosecutor told the jury that any harm would support a conviction of aggravated kidnapping. In his second and third challenges, Phillips argues the prosecutor misstated the facts and shifted the burden of proof by suggesting that Phillips failed to present evidence supporting his claim that surveillance videos in the Braum's parking lot showed no one leaving the vehicle.

1.  *Applicable Legal Principles*

Although Phillips' trial counsel did not object during the prosecutor's closing argument, appellate courts review claims of prosecutorial error based on a prosecutor's comments made during closing argument even without a timely objection. But the court may use the presence or absence of an objection in its analysis of the alleged error. *State v. Butler*, 307 Kan. 831, 864, 416 P.3d 116 (2018). A claimed misstatement of controlling law in the State's closing argument must be reviewed on appeal, even if the defendant failed to make a timely objection at trial. *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006).

The appellate court uses a two-step process to evaluate claims of prosecutorial error:  error and prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

"To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the

appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citations omitted.]" *Sherman*, 305 Kan. at 109.

See *State v. Blansett*, 309 Kan. 401, 412, 435 P.3d 1136 (2019). Even if the prosecutor's actions were egregious, reversal of a criminal conviction is not an appropriate sanction if the actions are determined to satisfy the constitutional harmless test. *Sherman*, 305 Kan. at 114.

When determining whether the prosecutor's statement falls outside the wide latitude given to the prosecutor, the appellate courts do not analyze the statement in isolation but consider the context in which the statement was made. *State v. Ross*, 310 Kan. 216, 221, 445 P.3d 726 (2019). "Often the line between permissible and impermissible argument is context dependent." *State v. Martinez*, 311 Kan. 919, 923, 468 P.3d 319 (2020).

We apply these principles to each statement Phillips challenges.

2. *The prosecutor did not commit error in his "bodily harm" statement.*

Phillips claims that the prosecutor committed error by misstating the law when he said, "[T]he injuries don't have to be huge, just injury to the body. That's it." Phillips

24

argues through this statement, the prosecutor misled the jury by implying that *any* bodily injury—even the sort of trivial injury excluded by *Royal*—could support a conviction of aggravated kidnapping, and the prosecutor's comments lessened the State's burden to prove the "bodily harm" element of aggravated kidnapping.

But as we have examined both in the sufficiency analysis and instructional analysis above—the definition of bodily harm used by Phillips in this case does not exactly match the plain language definition most recently used by our Supreme Court in *Moore*. 319 Kan. 563.

Importantly, a prosecutor's statement must be reviewed in its entirety and in the context in which it was made, not in isolation. *Ross*, 310 Kan. at 221. Viewing the prosecutor's comment within the context in which it was made, we better understand it:

> "And the evidence that was admitted corroborates [Jane]'s version of events, corroborates that he took her and held her against her will, that he caused injury in the process, and that injury in question, defense raised, she tells you when she's outside that car he's attacking with the screwdriver trying to get her back in, that's when she gets these injuries. When she gets back into the car and he's holding her, kicking at her, and she finally gets injured when she breaks free, falls to the ground, gets the injuries to the arm, *again the injuries don't have to be huge, just injury to the body. That's it*." (Emphasis added.)

In this segment, the prosecutor is rebutting the defense argument that the photos could show stabbing injuries or injuries Jane could have received when she fell or was kicked from the vehicle. Phillips testified the scratches came only from when "she dove on the ground." The prosecutor is emphasizing that the evidence showed Jane was injured by both the screwdriver and falling to the ground; and while Jane's injuries may not have been extensive, she still suffered injury as commonly understood. Taken in context, we find no error in the prosecutor's statement.

25

3. *The prosecutor misstated the evidence, but the error was harmless.*

Phillips claims next that the prosecutor committed error by misstating the facts in evidence and shifting the burden of proof. At trial, Phillips testified no one left the vehicle while they were parked at Braum's, and if anyone had, surveillance cameras would have captured it. During Phillips' cross-examination, the State elicited the following testimony:

"[STATE:]  You've looked at surveillance videos, right?
"[PHILLIPS:]  The surveillance I haven't seen, no surveillance videos.
"[STATE:]  You would agree with me there were surveillance videos from Braum's, right?
"[PHILLIPS:]  Yes, a lot of videos out there.
"[STATE:]  You'd agree with me those videos didn't depict anything, there was nothing caught on a camera, right?
"[PHILLIPS:]  Didn't happen.
"[STATE:]  Well, the cameras didn't even pick up you guys being in the parking lot, right?
"[PHILLIPS:]  Yes, it did.
"[STATE:]  It did?"

No surveillance videos were admitted into evidence. The defense commented during closing arguments that the State failed to present any eyewitness testimony or video evidence to support Jane's version of the events. As rebuttal, the prosecutor commented, "[W]here is this Braum's video, and as you know, defendant conceded on cross examination, they have all this. There are videos, cameras, they don't even show the car was there."

Prosecutors are generally afforded a wide latitude in crafting closing arguments to address the weaknesses of the defense. *State v. Watson*, 313 Kan. 170, 176, 484 P.3d 877 (2021). Moreover, a prosecutor may comment on the weakness or inconsistencies in the

26

defendant's statements or story. *State v. Bridges*, 297 Kan. 989, 1013, 306 P.3d 244 (2013). But a prosecutor errs when arguing a fact or factual inference without an evidentiary foundation. *Watson*, 313 Kan. at 179. If arguments do not remain consistent with the evidence, "the first prong of the prosecutorial misconduct test is met, and an appellate court must then consider whether the misstatement prejudiced the jury against the defendant and denied the defendant a fair trial." *State v. Killings*, 301 Kan. 214, 228, 340 P.3d 1186 (2015).

The prosecutor's comment stating that the Braum's videos did not show Jane's car was a clear misstatement of the facts. The prosecutor's statement argued facts not admitted in evidence and was inconsistent with the only evidence presented, in this case Phillips' testimony that the video did show the car. Although the State logically questions whether Phillips' testimony regarding the videos was coherent or useful, this is unimportant to our analysis of whether the prosecutor misstated the facts. The prosecutor's comment satisfies the first prong of the prosecutorial error test because it was not supported by the evidence presented in the case. 301 Kan. at 229. The State concedes as much.

We then move to the second step of the *Sherman* analysis, where we determine whether the error prejudiced the defendant's due process rights to a fair trial. See *Sherman*, 305 Kan. at 109. The State must show "'there is no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109.

Here, we find the State has met this showing. Phillips' cross-examination highlighted he disagreed with the State on whether a video showed Jane's vehicle in the parking lot—but because both Phillips and Jane testified to being in the Braum's parking lot, apparently neither side felt the video evidence so important to the case to admit it as evidence. And Phillips' testimony on the video evidence was confusing at best. First, he claimed not to have seen any surveillance video, then he claimed there were a "lot of

27

videos out there." Phillips then claimed the cameras showed he and Jane in the Braum's parking lot—which is in direct contradiction to his initial claim that he did not see any videos. Ultimately, the competing storylines running through this trial left the jury to make a credibility determination about who and what it believed. The jury either believed Phillips or it did not, and it apparently did not. There is no reasonable possibility this statement by the prosecutor on a clearly contested but minor issue affected that verdict, so we find the error harmless.

4. *The prosecutor did not improperly shift the burden of proof.*

Next, Phillips claims that through a statement on the same topic, the State tried to shift the burden of proof by suggesting Phillips could have admitted the surveillance video into evidence but chose not to do so. The State responds that the prosecutor was simply rebutting the defense counsel's closing argument by pointing out that the defendant had access to the video evidence and could have produced it.

A prosecutor may not attempt to shift the burden of proof to the criminal defendant or misstate the legal standard about the applicable burden of proof. *State v. Williams*, 299 Kan. 911, 939, 329 P.3d 400 (2014). But a prosecutor may properly discuss the weaknesses of the defense case by pointing to a lack of evidence supporting the defendant's theory of the case. 299 Kan. at 940; *State v. Duong*, 292 Kan. 824, 832-33, 257 P.3d 309 (2011).

Defense counsel argued during closing that the State

"didn't have any testimony from any eyewitnesses, didn't have video to support [Jane]'s version of events, and what we do see from the Axon videos and from the police showing up I believe is more consistent with George's version of events. So again, we submit there isn't enough evidence in this case to find Mr. Phillips guilty of aggravated kidnapping."

28

During the State's rebuttal, the prosecutor commented:

"Ultimately, the defense asks if all of this really happened, where's the evidence? And it's pretty typical when all the evidence points to these crimes being committed by the defendant, just stand up and pound the table and say there should be more evidence then, where is this Braum's video, and as you know, defendant conceded on cross examination, they have all this. There are videos, cameras, they don't even show the car was there. You saw the car was there, it was pointed in the wrong direction. *If there's all this other evidence that exonerates him, they have the evidence. They have access to all this*. You need to consider the evidence that was admitted in the case. And the evidence that was admitted corroborates [Jane]'s version of events." (Emphasis added.)

The State appropriately relies on our Supreme Court's decision in *State v. Hachmeister*, 311 Kan. 504, 464 P.3d 947 (2020) to support its position that the prosecutor was merely pointing out that the defense could have produced the evidence if it desired. In *Hachmeister*, the court found when the defense attacks the State's evidence because the State failed to admit a certain piece of evidence, the State may rebut such an attack by informing the jury that the defense can introduce evidence. 311 Kan. at 516. We agree that Hachmeister directs our decision.

Here, the prosecutor was refuting Phillips' closing argument faulting the State for failing to admit video evidence. Simply put, the prosecutor was informing the jury that Phillips had access to the same video evidence and could have introduced it during trial, which the defendant has a right to do. 311 Kan. at 516. As a result, the prosecutor appropriately rebutted the defense argument and did not shift the burden of proof to Phillips. The prosecutor did not commit error, and we need not address the prejudice prong of the *Sherman* analysis.

The final issue for us to consider is whether cumulative error deprived Phillips of a fair trial. Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019).

Here, we have found only one error—the harmless prosecutorial error—which we could consider in a cumulative error analysis. See *State v. Waldschmidt*, 318 Kan. 633, 546 P.3d 716 (2024) (holding unpreserved instructional issues that are not clearly erroneous may not be aggregated in a cumulative error analysis). But the cumulative error rule does not apply if there are no errors or only a single error. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). Phillips' arguments of cumulative error fail.

Affirmed.